**In re James and Cynthia ALDRICH, Debtors.**

**John O. Desmond, Chapter 7 Trustee of James Aldrich, Plaintiff,**

v.

**John D. McNiff, Jr. and Artisan Homes Corp., Defendants.**

**Bankruptcy No. 02–18996–JNF. Adversary No. 03–1101.**

United States Bankruptcy Court, D. Massachusetts.

May 17, 2005.

Gary W. Cruickshank, Boston, MA, for Debtors.

## MEMORANDUM

JOAN N. FEENEY, Chief Judge.

### I. BACKGROUND

The matter before the Court is the Motion to Approve Stipulation Resolving Adversary Proceeding (the "Motion") filed by the Chapter 7 Trustee of the estate of James and Cynthia Aldrich to which the law firm of Bernstein & Bell objects. Pursuant to his Motion, the Trustee seeks court authority to compromise a claim against the Defendants, John D. McNiff, Jr. ("McNiff") and Artisan Homes Corp. ("Artisan"), arising out of the civil action commenced by James Aldrich (the "Debtor") against them in the Essex Superior Court, Department of the Trial Court on March 4, 2000. Less than two years after filing suit against McNiff in the Superior Court, the Debtor, on December 13, 2002, filed a voluntary Chapter 7 petition. The Trustee filed a Notice of Removal with respect to the Debtor's pending action in the Essex Superior Court on March 13, 2003.

The Debtor was represented by Ronald L. Bell, Esq. ("Attorney Bell") and the firm of Bernstein & Bell in the Essex Superior Court. In the Verified Complaint prepared by Attorney Bell, the Debtor alleged that he owned 33% of the 600 outstanding shares of Artisan, a home construction business; that the remaining shares were owned by McNiff; that despite the disparity in the ownership of the shares, he and McNiff had agreed to share equally in the operations and management of Artisan and to be compensated equally from its profits; that beginning in September of 1997, McNiff began to exclude him from full participation in the business; that in June of 1999, McNiff took complete control of the corporate books and records and deposited money received from Arti-

san's contracts into various non Artisan accounts in which he had interests; that McNiff improperly paid monies to himself and his other businesses from Artisan's accounts; that despite his requests, McNiff failed and refused to document his financial transactions; that on December 8, 1999 at a meeting of Artisan's Board of Directors McNiff promised to provide him with documentation to facilitate an accounting; and that as of March 14, 2000 McNiff had failed to produce any documentation. Based upon those allegations, Aldrich, seeking damages in excess of $400,000, formulated seven counts as follows: Count I: Shareholders' Derivative Action; Count II: Breach of Fiduciary Duty; Count III: Injunctive Relief–Receiver; Count IV: Accounting; Count V: Specific Performance; Count VI: Misrepresentation, and Count VII: Promissory Estoppel.

On March 13, 2003, one day before filing the Notice of Removal, the Trustee filed a Motion to Employ Special Counsel through which he sought court authority to employ Attorney Bell "to represent the estate in the Essex Superior Court on the same terms and conditions set forth in the Client Fee Agreement." The Trustee added that "[t]here is no money in the estate at this time and it appears to the Trustee that the claim pending in the Essex Superior Court is the only asset to be administered in this case."

In his affidavit filed in conjunction with the Trustee's Application, Attorney Bell stated that he had been representing the Debtor under a written agreement to be paid hourly for his services and that as of January 31, 2003 he was owed $60,448.04. The Client Fee Agreement attached to the affidavit revealed that Attorney Bell and his firm had received a retainer in the sum of $1,500 and that the "primary attorney" would be paid at the hourly rate of $175.

On March 27, 2003, the Court granted the Trustee's Application.

In support of the Motion now before the Court, the Trustee represented that the Debtor scheduled unsecured claims in the approximate amount of $126,000. He added the following:

> The parties have conducted discovery and the trustee has agreed to settle the case subject to court approval for the sum of $110,000 to be paid to the trustee by McNiff and the trustee will assign the debtor's stock in Artisan Homes to McNiff in consideration of the payment of $110,000. In consideration of the settlement amount to be paid by McNiff, the Trustee and the Debtor will execute releases to McNiff. Artisan Homes is out of business and its only asset is a bank account for approximately $15,000. McNiff alleges that there are debts owed to the creditors of Artisan Homes totaling approximately $18,000 and that there are also a number of years of tax returns for Artisan Homes that have to be prepared.

The Trustee also represented that to prevail on the merits he would have to show that McNiff diverted assets of Artisan for his own benefit. Noting that Artisan paid both McNiff and the Debtor annual salaries of $60,000 over the years, the Trustee, relying upon an examination of documents conducted by Craig Jalbert, a Certified Insolvency and Restructuring Advisor with Verdolino & Lowey, P.C., stated:

> The Debtor's estimate of the profits on various projects of Artisan Homes is based on assumptions of the costs involved in site and excavating work on lots of real property that occurred several years ago. It will be difficult to ascertain what the actual costs of such work should have been. The trustee believes that it is likely that he may recover a judgment against McNiff but

that the cost of litigating the case would be substantial. The trustee believes that if he were to obtain a judgment it may be difficult to collect the full amount from McNiff.

The Trustee added that a trial would require ascertaining the costs of various construction projects completed in the late 1990s. He stated that the estate has no money, has incurred substantial legal and accounting fees, and will likely incur an additional $15,000 in accounting fees and "probably at least $25,000 or more in legal fees."

Eugene D. Bernstein, Esq. filed an Opposition to the Trustee's Motion on behalf of Bernstein & Bell. He stated, *inter alia,* that the Trustee agreed to settle the adversary proceeding despite McNiff's failure to produce documents pursuant to orders of both the Essex Superior Court and this Court; that the Trustee did not discover the $15,000 bank account in the name of Artisan until after agreeing to settle the adversary proceeding; and that the Trustee has no evidence that McNiff could not satisfy a judgment in excess of the amount of the settlement. He also noted that if the Trustee were successful on Count I there would be a potential award of legal fees. Additionally, he complained that "to incorporate the $15,000 account into the settlement and transfer it to McNiff gives an alleged thief an unjustified windfall," and that "by transferring the stock to McNiff, the Trustee is effectively settling the case for about $5,000 less than the $100,000 that was offered before the CPA started his examination."

The Court heard the Trustee's Motion and Bernstein & Bell's Opposition on March 8, 2005. At the hearing the parties discussed the existence of Artisan's funds which had been segregated for the purpose of satisfying accountants' fees. At the conclusion of the hearing, the Court took the matter under advisement. The Court directed the parties to file further pleadings or evidence in support of or in opposition to the proposed settlement by March 31, 2005.

Following the hearing, the Trustee filed a Supplemental Response in Support of his Motion. In his Response, the Trustee reiterated that the estate has no funds and is administratively insolvent. He disclosed that his accountant recommended the settlement following his review of materials produced by McNiff. He added that the accountant has incurred fees of $17,500 and will incur additional fees of $17,000 to $35,000 if there is a trial. He also stated that Attorney Bell informed him that he had received a retainer of $10,000 or $15,000 and has incurred postpetition fees of approximately $23,000, in addition to prepetition fees in the sum of $58,761.66. According to the Trustee, assuming Attorney Bell received a $10,000 retainer, he has incurred fees in excess of $91,761.66 and discovery has not been completed. The Trustee also stated that the claims total $120,205.72 and that no other creditors have objected to the settlement other than Bernstein & Bell. The Trustee determined that, if Bernstein & Bell's prepetition claim is allowed as filed, the firm will receiver a dividend of approximately 48%. The Trustee concluded:

Treble damages are not going to pay creditors if they cannot be collected. The trustee believes that it is not worth the risk of incurring tens of thousands of dollars in administrative expenses that may not be paid to try a case that could be lost, or getting a judgment that may not be collected. If the court approves the settlement, the trustee would have to file a tax return, and he could file the final report within 2 months. The case involves matters that happened 6 to 8

years ago and the trustee believes it is time to bring this matter to conclusion.

Bell & Bernstein filed a Memorandum of Law with respect to a number of issues raised by the Court at the March 8, 2005 hearing, namely whether the Trustee should have taken into account the likelihood that the Court would not allow McNiff to profit from his wrongdoing and thus deny him the right to receive any of the monies diverted from Artisan; the likelihood that the Court would order McNiff to pay the trustee, standing in the shoes of the minority shareholder, reasonable expenses including attorneys' fees; and whether the Trustee would have difficulty collecting a judgment form McNiff. It also filed a Memorandum of Law Concerning the Recovery of Multiple Damages, as well as a supplement to its proof of claim, in which it represented that it was owed $26,455.78 as of October 31, 2004 in postpetition fees and $58,761.66 in prepetition fees.[1] It asserted that if the Court were to refuse to divide profits allegedly diverted by McNiff, the estate, in effect, would recover multiple damages with respect to Count I of the complaint.

The Trustee filed a Motion for Leave to File Accountant's Affidavit in Response to Bernstein & Bell's Memorandum, which motion the Court granted. Craig Jalbert disputed Bernstein & Bell's assertion that he subtracted total expenses of Artisan's various projects from the net profits instead of the gross profits. He stated: "I stand by my analysis of the projected or estimated range of profits available to shareholders of the Artisan Homes Corp. as being between $75,000.00 and $150,000."

McNiff filed a Memorandum in Support of the Trustee's Motion in which he stated that the complaint filed in the Essex Superior Court did not contain a cause of action which would result in multiple damages. Specifically, he stated that treble damages are not available in a shareholder derivative suit. With respect to the Court's order set forth on the record at the March 8, 2005 hearing that McNiff file a financial statement, McNiff stated: "McNiff's counsel has still not located any law requiring McNiff to provide a financial statement as indicated by the court." Accordingly, McNiff did not file a financial statement. McNiff also concluded that Bell & Bernstein's fees are grossly inflated.

On May 4, 2005, Bernstein & Bell filed a Reply to the Affidavit of Craig Jalbert setting forth an alternative analysis of the estate's potential recovery against McNiff. It reiterated its view that a fair settlement would be in excess of $176,031. It stated:

> If one adds a potential award of reasonable expenses, including attorney's fees, the fair settlement amount greatly exceeds the $110,000, currently proposed by the Trustee. And when one incorporates into the settlement mix the $15,000 Artisan Homes bank account that the Trustee intends to transfer to McNiff, the unfairness of the Trustee's settlement proposal is drawn in bold relief.

## II. DISCUSSION

In *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995), the court articulated the following specific factors in considering whether to approve a compromise: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the

---

1. The Statement of Professional Services dated December 31, 2002, approximately two weeks after the Debtor filed his Chapter 7 petition reflects a balance due of $43,76124, including interest charges. The Court is unable to reconcile this sum with the amount of $58,761.66 now claimed by Bernstein & Bell.

litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise."

The Court finds, based upon the arguments presented and the evidence submitted, that the Trustee has not sustained his burden with respect to the above factors, particularly the probability of success in the litigation and the difficulties attendant to collection. There is no dispute that a trial in this case would involve review of various construction contracts from the 1990s. The litigation would be complex and costly. Nevertheless, Bernstein & Bell, the single largest creditor holding almost half the total amount of unsecured claims, objects to the settlement, although the remaining creditors presumably prefer receipt of a certain dividend now rather than an uncertain one in the future.

With respect to the difficulties of collection, the Trustee admitted that he had not obtained a financial statement from McNiff. McNiff, for his part, refused to submit an audited financial statement as ordered by the Court, a circumstance from which this Court could infer that McNiff has the ability to satisfy a judgment in excess of the settlement amount.

Finally, the Court is troubled by the Trustee's decision to relinquish the funds earmarked for the payment of an independent accountant. Although Mr. Jalbert was employed by the Trustee, in view of the circumstances of this case and Bernstein & Bell's strenuous objection to the settlement, the Court finds that the Trustee's assessment of his potential recovery is not reasonable due to his decision to release these funds to McNiff, as well as for the reasons stated by Bernstein & Bell in their pleadings.

## III. CONCLUSION

Despite the duration of these proceedings and the risks and costs inherent in continued litigation, the Court shall enter an order denying the Trustee's Motion.